UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

| | | |
|---|---|---|
| **JACOB REED**, individually and on behalf of all others similarly situated | § § § | Docket No. 4:20-CV-29-JHM |
| Plaintiff, | § § | |
| v. | § § § | **JURY TRIAL DEMANDED** |
| **SAFEGUARD PROPERTIES MANAGEMENT, LLC** | § § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| Defendant. | § § | |

## COLLECTIVE ACTION COMPLAINT

### I. SUMMARY

1. Jacob Reed brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against Safeguard Properties Management, LLC.

2. Plaintiff and the other workers like typically worked more than 40 hours a week.

3. But Safeguard did not pay them overtime.

4. Instead of paying overtime as required by the FLSA, Safeguard improperly classified these workers as independent contractors and paid them a set monthly amount for each property they inspected with no overtime pay.

5. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

### II. JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a

substantial part of the events or omissions giving rise to the claim occurred in this District and Division.

8. Reed worked for Safeguard in this District and Division.

9. Specifically, Reed worked for Safeguard in and around Owensboro, Kentucky. Indeed, Reed regularly worked overtime for Safeguard in and around Owensboro, Kentucky. Despite regularly working over 40 hours, Safeguard only paid him a flat amount for each property he inspected with no overtime for the work he did for Safeguard in and around Owensboro, Kentucky.

10. Defendant Safeguard conducts substantial business operations within this District and Division.

### III. THE PARTIES

11. Reed worked for Safeguard as a Mortgage Field Inspector from approximately January 2015 through August 2018.

12. Throughout his employment, Safeguard paid him a flat rate per property inspected with no overtime, regardless of the numbers of hours he worked, and classified him as an independent contractor.

13. In fact, Safeguard was Reed's employer, and Reed was Safeguard's employee.

14. Reed's written consent to be a party plaintiff is attached as Exhibit 1.

15. Reed brings this FLSA collective action on behalf of himself and all other similarly situated workers who Safeguard classified as independent contractors and paid according to its per property policy.

16. Safeguard paid each of these workers on a per property basis, regardless of the number of hours they worked in violation with the FLSA.

17. The collective of similarly situated employees sought to be certified is defined as:

> **ALL CURRENT AND INSPECTION PERSONNEL WHO WORKED FOR SAFEGUARD DURING THE PAST THREE**

**(3) YEARS WHO WERE CLASSIFIED AS INDEPENDENT CONTRACTORS ("Putative Class Members").**

18. Defendant **Safeguard Properties Management, LLC** may be served by serving its registered agent for service of process, **Corporation Service Company, 421 West Main Street, Frankfort, Kentucky 40601**.

### IV. COVERAGE UNDER THE FLSA

19. At all times hereinafter mentioned, Defendant has been an employer within the meaning of the Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all times hereinafter mentioned, Defendant has been part of an enterprise within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. At all times hereinafter mentioned, Defendant has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

22. At all times hereinafter mentioned, Plaintiff and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

23. Safeguard treated Reed and the Putative Class Members as employees.

24. Safeguard dictated the pay practice applied to Reed and the Putative Class Members.

25. Safeguard's misclassification of Reed and the Putative Class Members as independent contractors does not alter their status as "employees" under the FLSA.

26. Safeguard applied this policy regardless of any alleged individualized factors such as job position, job duties/responsibilities, or geographic location.

27. By paying Reed and the Putative Class Members per property with no overtime, Safeguard violated (and continues to violate) the FLSA's requirement that it pay employees at 1 and ½ times their regular rates for hours worked in excess of 40 in a workweek.

28. As a result of Safeguard's per-property pay scheme, Reed and the Putative Class Members do not receive overtime as required by the FLSA.

## V.   FACTS

29. Safeguard bills itself as "the leader in the mortgage field services industry."[1]

30. As part of its operations, Safeguard employs inspection personnel, including Reed and the Putative Class Members, to provide mortgage inspection services to its clients.

31. Safeguard classifies these workers as independent contractors.

32. But Safeguard does not hire these workers on a project-by-project basis.

33. Rather, Safeguard hires and treats these workers just like regular, even if sometimes short term, employees.

34. Many of these individuals worked for Safeguard on a "per-property basis" and make up the proposed Putative Class.

35. Reed did not have any supervisory duties.

36. Reed did not hire for fire employees.

37. Reed did not exercise discretion and judgment as to matters of significant.

38. Reed was a blue-collar worker.

39. Throughout his employment, Safeguard classified him as an independent contractor and paid him per property that he inspected with no overtime.

---

[1] https://safeguardproperties.com/aboutus/ (last visited February 19, 2020).

40. Safeguard paid Reed and the Putative Class Members according to its per-property pay scheme.

41. Safeguard did not pay Reed and the Putative Class Members on a salary basis.

42. If Reed and the Putative Class Members did not work, they did not get paid.

43. Reed's work schedule is typical of the Putative Class Members.

44. Reed and the Putative Class Members typically work approximately 65-70 hours each week.

45. Safeguard knows Reed and the Putative Class Members work for approximately 65-70 hours each week.

46. Reed and the Putative Class Members do not receive overtime for hours worked in excess of 40 in any of those weeks.

47. Instead, Reed and the Putative Class Members are paid a set amount for each property they inspect.

48. For example, Safeguard paid Reed approximately $9-$17 per property he inspected and did not pay him overtime.

49. Without the job performed by Reed and the Putative Class Members, Safeguard would not be able to complete its business objectives.

50. Reed and the Putative Class Members relied on Safeguard for work and compensation.

51. Reed and the Putative Class Members cannot subcontract out the work they are assigned by Safeguard.

52. Reed and the Putative Class Members must follow Safeguard's and/or its clients' policies and procedures.

53. Reed and the Putative Class Members' work must adhere to the quality standards put in place by Safeguard and/or its clients.

54. Reed and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

55. Reed and the Putative Class Members did not market their services while employed by Safeguard.

56. Reed and the Putative Class Members did not incur operating expenses like rent, payroll, marketing, and/or insurance.

57. At all relevant times, Safeguard and/or its clients maintained control, oversight, and direction of Reed and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

58. Safeguard controls Reed and the Putative Class Members' pay.

59. Likewise, Safeguard and/or its clients control Reed and the Putative Class Members' work.

60. Reed and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

61. Safeguard and/or its clients set these workers' schedules and compensation; supervises them; requires them to adhere to strict guidelines, directive, and its (or its clients') policies and procedures.

62. Safeguard controls Reed and the Putative Class Members' opportunities for profit and loss by dictating the hours they work and the rates they are paid.

63. While working for Safeguard, Safeguard controlled all the significant or meaningful aspects of the job duties Reed and the Putative Class Members perform.

64. Even though Reed and the Putative Class Members work away from Safeguard's offices without the constant presence of Safeguard supervisors, Safeguard still controls significant aspects of their job activities by enforcing mandatory compliance with its (or its clients') policies and procedures.

65. The daily and weekly activities of Reed and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists.

66. All the Putative Class Members perform similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities they perform.

67. All the Putative Class Members work similar hours and are denied overtime as a result of the same illegal pay practice.

68. All the Putative Class Members work in excess of 40 hours each week.

69. Safeguard uniformly denies Reed and the Putative Class Members overtime for the hours they work in excess of 40 hours in a single workweek.

70. Neither Reed nor any of the other Putative Class Members ever received guaranteed weekly compensation irrespective of the hours or days worked.

71. Safeguard's per-property pay scheme violates the FLSA because it deprives Reed and the Putative Class Members of overtime for the hours they work in excess of 40 hours in a single workweek.

72. Safeguard knew, or showed reckless disregard for whether, the Putative Class Members were not exempt from the FLSA's overtime provisions.

73. Safeguard did not pay Reed and the Putative Class Members overtime.

74. Safeguard knew, or showed reckless disregard for whether, the conduct described in this Complaint violated the FLSA.

### VI.   FLSA VIOLATIONS

75. As set forth herein, Safeguard has violated, and is violating, Section 7 of the FLSA, 29 U.S.C. § 207, by employing employees in an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA for workweeks longer than forty (40) hours without compensating such employees for their employment in excess of forty (40) hours per week at rates no less than 1 and ½ times the regular rates for which they were employed.

76. Safeguard knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. Safeguard's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

77. Accordingly, Reed and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1 and ½ times their rate of pay, plus liquidated damages, attorney's fees and costs.

### VII. COLLECTIVE ACTION ALLEGATIONS

78. The Putative Class Members were victimized by Safeguard's pattern, practice, and/or policy which is in willful violation of the FLSA.

79. Other Putative Class Members worked with Reed and indicated they were paid in the same manner (a flat amount per property they inspected with no overtime) and performed similar work.

80. Based on his experience at Safeguard, Reed knows Safeguard's illegal practices were imposed on other Putative Class Members.

81. The Putative Class Members are similarly situated in all relevant respects.

82. The Putative Class Members are blue-collar workers.

83. Even if their precise job duties might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

84. The illegal per-property pay scheme that Safeguard imposed on Reed was likewise imposed on the other Putative Class Members.

85. All the Putative Class Members were victimized by Safeguard's pattern, practice, and policy which is in willful violation of the FLSA.

86. Like Reed, the Putative Class Members are denied overtime when they work more than 40 hours in a week.

87. The overtime owed to Reed and the Putative Class Members will be calculated using the same records and the same formula.

88. Reed's experiences are therefore typical of the experiences of the Putative Class Members.

89. The specific job titles or precise job locations of the various members of the Putative Class do not prevent collective treatment.

90. Reed has no interest contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

91. Like each Putative Class Members, Reed has an interest in obtaining the unpaid overtime wages owed under federal law.

92. A collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

93. Absent a collective action, many Putative Class Members will not obtain redress of their injuries and Safeguard will reap the unjust benefits of violating the FLSA.

94. Further, even if some of the Putative Class Members could afford individual litigation against Safeguard, it would be unduly burdensome to the judicial system.

95. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

96. The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

97. Among the common questions of law and fact are:

   a. Whether Safeguard employed the Putative Class Members within the meaning of the FLSA;

   b. Whether Safeguard's decision to pay a flat amount per property inspected with no overtime to these workers was made in good faith;

   c. Whether Safeguard's violation of the FLSA was willful; and

   d. Whether Safeguard's illegal per-property pay scheme applied to the Putative Class Members.

98. Reed and the Putative Class Members sustained damages arising out of Safeguard's illegal and uniform employment policy.

99. Consistent with Safeguard's illegal per-property pay scheme, Reed and the Putative Class Members were not paid overtime when they worked more than 40 hours in a workweek.

100. As part of its regular business practices, Safeguard intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Reed and the Putative Class Members.

101. Safeguard's illegal per-property pay scheme deprived Reed and the Putative Class Members of the premium overtime wages they are owed under federal law.

102. There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

103. Those similarly situated employees are known to Safeguard, are readily identifiable, and can be located through Safeguard's records.

## VIII. Jury Demand

104. Reed demands a trial by jury.

## IX. Relief Sought

105. WHEREFORE, Reed prays for judgment against Safeguard as follows:

   a. For an Order allowing this action to proceed as a collective action under the FLSA and directing notice to the Putative Class Members;

   b. For an Order pursuant to Section 16(b) of the FLSA finding Safeguard liable for unpaid back wages due to Reed and the Putative Class Members and for liquidated damages equal in amount to the unpaid compensation found due to Reed;

   c. For an Order awarding Reed and the Putative Class Members the costs of this action;

   d. For an Order awarding Reed and the Putative Class Members their attorneys' fees;

   e. For an Order awarding Reed and the Putative Class Members unpaid benefits and compensation in connection with the FLSA violations;

   f. For an Order awarding Reed and the Putative Class Members pre- and post-judgment interest at the highest rates allowed by law;

   g. For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: *s/ Charles E. Moore*
    **Moore & Moorman**
    401 Frederic St.
    Suite A202
    Owensboro, Ky 42302

**AND**

**Michael A. Josephson*** 
Texas Bar No. 24014780 
**Andrew W. Dunlap*** 
Texas Bar No. 24078444 
**Taylor A. Jones*** 
Texas Bar No. 24017823 
**JOSEPHSON DUNLAP LAW FIRM** 
11 Greenway Plaza, Suite 3050 
Houston, Texas 77046 
713-352-1100 – Telephone 
713-352-3300 – Facsimile 
mjosephson@mybackwages.com 
adunlap@mybackwages.com 
tjones@mybackwages.com

**AND**

**Richard J. (Rex) Burch*** 
Texas Bar No. 24001807 
**BRUCKNER BURCH, P.L.L.C.** 
8 Greenway Plaza, Suite 1500 
Houston, Texas 77046 
713-877-8788 – Telephone 
713-877-8065 – Facsimile 
rburch@brucknerburch.com 
*\*Pro Hac Vice Forthcoming*

**ATTORNEYS IN CHARGE FOR PLAINTIFF**